# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

*In Re: Application of Pola Maritime,* )
*Ltd., for an Order Pursuant to* )
*28 U.S.C. § 1782 to Conduct Discovery* )    CV416-333
*for Use in Foreign Proceedings* )

## ORDER

Claimant Pola Maritime, Ltd. ("Pola") has lodged a claim against respondents Agribusiness United Savannah Logistics, LLC ("Agribusiness Savannah"), and Agribusiness United DMCC (Dubai), LLC ("Agribusiness Dubai") before the London Maritime Arbitrators Association (LMAA). *See* doc. 1. Pola came to this Court seeking (and received) subpoenas to serve in this district, including Fed. R. Civ. P. 45(d)(3) subpoenas upon Agribusiness Dubai, Agribusiness United Multi Commodities, Inc. ("Agribusiness Commodities") and Agribusiness United North American Corporation ("Agribusiness North American"). *See* doc. 2. Objectors Agribusinesses Commodities and North American have moved to quash the subpoenas (docs. 10, 11 & 21)[1] and Pola has cross-moved to compel them (doc. 18).

---

[1] Pola agreed to withdraw the subpoena served on Agribusiness Dubai, doc. 13 at 1, so Agribusiness Dubai's motion to quash (doc. 9) is **DENIED** as moot.

## I. BACKGROUND[2]

Pola chartered the M/V N Schelde to transport agricultural cargo from Argentina to Atlantic Morocco, in a charter agreement with Agribusiness Savannah with a choice of law provision (English law) and choice of forum for any dispute (arbitration in accordance with the rules of the LMAA). A dispute arose, and Pola initiated arbitral proceedings against Agribusinesses Savannah and Dubai.

Pola contends that Agribusiness Dubai is actually the principal to the charter agreement -- not Agribusiness Savannah, which signed as Dubai's agent.[3] In the arbitral proceeding, Pola seeks: 1) indemnity from either or both Agribusinesses Savannah and Dubai for pending

---

[2] The background is synthesized from the various pleadings, including the original application (doc. 1) and the parties' various cross motions (docs. 9, 10, 11, 18 & 21). These facts, at least, are not in dispute.

[3] The parties executed three fixtures, the first with Agribusiness Savannah as the Charterer. Doc. 1-2 (Declaration of Edward Gray) at ¶ 9. However, when Pola issued its freight invoice to Agribusiness Savannah, it was asked to reissue it to Agribusiness Dubai. Ultimately, Agribusiness Dubai (not the signatory to the Charter) satisfied the first two freight invoices, *not* Agribusiness Savannah. *Id.* at ¶¶ 9-11. Documents produced by Wells Fargo and Bank of America have further underscored "a web of fund commingling and sharing of information about the various commercial transactions of the Agribusiness entities." Doc. 18 at 3-4. Objectors Agribusinesses North America and Commodities have not seriously disputed this characterization, emphasizing instead that because they are not parties to the arbitration and no claims have yet been lodged against them in the arbitration, discovery of their relationship with the named respondents is fundamentally improper. *See* docs. 10, 11 & 21.

misdelivery/conversion claims, and 2) outstanding freight and demurrage (a charge for failure to load or discharge the ship within the time agreed) damages. The documents currently sought would allegedly illuminate the relationships among the various Agribusiness entities, for use in the proceeding before the LMAA.[4]

## III. ANALYSIS

Objectors dispute that the subpoenas were properly issued pursuant to 28 U.S.C § 1782. Docs. 10 & 11; *see also* doc. 18, Exh. 1 (Agribusiness North America's objection and response to subpoena) & Exh. 2 (Agribusiness Commodities' objection and response to subpoena). Under § 1782(a), "[t]he district court in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or

---

[4] For example, Pola seeks from Agribusinesses North America and Commodities a qualified individual to testify regarding contracts between the various Agribusiness entities for the past three years; an explanation of business dealings between the various Agribusiness entities and "cargoes carried on board" the Vessels M/V N Schelde, M/V Pola Palekh, and M/V Pola Indian since January 1, 2015; and an explanation of the relationship between the various Agribusiness entities and Agroglobal S.A. from January 1, 2015 to the present. Doc. 1-1 at 39 & 47. Pola further seeks the production of documents, including "bank slips, wire details, payment information, or instructions" from the various Agribusiness entities related to cargo contracts with those three vessels; "contracts and/or communications between any Agribusiness entity and Agroglobal S.A. from January 1, 2015 to the present day"; and "documents relating to contracts or agreements" amongst the various Agribusiness entities. *Id.* at 42-43 & 50-51.

international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court." A district court is authorized to grant an application if the following statutory requirements are met:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007) (citing 28 U.S.C. § 1782(a)); *see also In re Application of Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006). Here, as claimant in the arbitration, Pola is certainly an "interested person," seeking evidence found in this district, and that evidence sought is certainly within the meaning of § 1782. So, the question is whether the LMAA is a "foreign tribunal" for the purpose of § 1782.

### A. Foreign Tribunals

As to what comprises a "foreign tribunal," the Supreme Court has noted that

when Congress established the Commission on International Rules of Judicial Procedure in 1958, it instructed the Rules Commission to recommend procedural revisions "for the rendering of assistance to foreign courts and quasi-judicial agencies." Section 1782 had previously referred to "any judicial proceeding." The Rules Commission's draft, which Congress adopted, replaced that term with "a proceeding in a foreign or international tribunal." Congress understood that change to "provid[e] the possibility of U.S. judicial assistance in connection with [administrative and quasi-judicial proceedings abroad]." S. Rep. No. 1580, at 7-8, U.S. Code Cong. & Admin. News 1964, pp. 3782, 3788; *see* Smit, International Litigation 1026-1027, and nn. 71, 73 ("[t]he term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts"; in addition to affording assistance in cases before the European Court of Justice, § 1782, as revised in 1964, "permits the rendition of proper aid in proceedings before the [European] Commission in which the Commission exercises quasi-judicial powers").

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).

Thus courts, as well as "quasi-judicial agencies" and "arbitral tribunals," comprise the types of bodies that § 1782 means to address. Pola contends that the LMAA is one such tribunal; Agribusinesses North American and Commodities disagree. Docs. 10 at 7 & 11 at 7 (arguing Pola is restricted to the discovery and disclosure procedures authorized by the LMAA and can't come fishing around the Southern District of Georgia with any federal subpoenas).

The *Intel* court, in setting forth a functional description of a

5

"foreign tribunal" under § 1782, focused on the judicial reviewability of the decisions of the European Commission in determining that the body was a foreign or international tribunal under § 1782. 542 U.S. at 258 (the Commission's role "as a first-instance decisionmaker," subject to judicial review, did not "exclude" it "from § 1782(a)'s ambit"). And awards by the LMAA are reviewable by the English Courts pursuant to the English Arbitration Act of 1996.[5] Hence, while the LMAA "is much like a purely private arbitration," its reviewability by a true judicial body brings it within the § 1782 definition of a "foreign tribunal." *Ex rel*

---

[5] Per the LMAA website:

> How can an award be challenged or appealed against?
>
> There may be a challenge to an award if a serious irregularity, as defined in s.68(2) of the Arbitration Act 1996 can be shown. Such challenges are rarely made, however, because of the difficulty of proving the relevant grounds, and few of those that are made are successful. The advice of experienced lawyers is essential before mounting a challenge, and in order to pursue one lawyers must be involved.
>
> An appeal on a question of law arising out of an award may be made under s.69 of the Arbitration Act 1996. However, unless the parties agree, leave to appeal has first to be obtained. That is not easily done having regard to s.69(3) of the Act, and in particular to sub-section (c) thereof. Even in those relatively rare cases where leave is granted, a substantial proportion of awards are upheld. As with s.68 challenges, the advice of experienced lawyers is essential before seeking leave to appeal, and in order to pursue an application lawyers must be involved.

"Appeals, Challenges and Precedents," *available at* http://www.lmaa.london/faq.aspx?pkFaqCatID=9e23fba1-55e9-4309-ade5-31aa2debd82e (*last accessed* August 25, 2017).

*Application of Winning (HK) Shipping Co. Ltd.*, 2010 A.M.C. 1761, 1773-74 (C.D. Cal. 2010); *see also In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517 (S.D.N.Y. 2016) (the LMAA is a foreign tribunal within the meaning of § 1782); *In re Owl Shipping, LLC*, 2014 WL 5320192 at * 2 (D.N.J. Oct. 17, 2014) (same).

### B. The *Intel* Factors

Even if the *prima facie* requirements are satisfied, the *Intel* court set forth additional, discretionary factors to be considered before authorizing discovery under § 1782:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, because the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restriction or other policies of a foreign county or the United States; and (4) whether the request is otherwise unduly intrusive or burdensome.

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1271-72 (11th Cir. 2014); *see also In re: Clerici*, 481 F.3d at 1331.

Here, as to the first factor, there is no dispute that neither

Agribusinesses North America nor Commodities are participants in the LMAA proceeding. As to the second, however, "the tribunal at issue is a first-instance decision maker that renders decisions which are reviewable in an English court" and objectors have offered "no evidence or case law [ ] that indicates that the foreign government or court would be unreceptive to United States federal-court judicial assistance." *Application of Winning (HK)*, 2010 A.M.C. at 1777; *see* docs. 10 at 10 & 11 at 10.

And neither objector has convincingly argued that Pola's subpoena requests "conceal an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Application of Winning (HK)*, 2010 A.M.C. at 1777; *see also Intel*, 542 U.S. at 259-65. Indeed, they merely conclusorily contend that "this discovery . . . has been served in contravention of the terms of the arbitration," which has its own discovery and disclosure procedure. Doc. 10 at 10 & doc. 11 at 10. And the case law demonstrates that the English courts have explicitly sanctioned § 1782(a) as an appropriate vehicle for propounding discovery. *See, e.g., South Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincient" NV*, 1 App. Cas. 24

(1986), *cited in Intel*, 542 U.S. at 261-62 (noting the "House of Lords ruled that non-discoverability under English law did not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782.").

As to the fourth factor, objectors' contention that the subpoenas are unduly burdensome and intrusive on their face because they "seek documents unrelated to any pending claim or defense" and "outside the scope of permissible discovery" (docs. 10 at 10-11 & 11 at 10-11; *see also* doc. 18, Exhs. 1 ¶ 2) is not convincing in the face of the evidence already in hand. Pola has shown that the Agribusiness entities often behave interchangeably, transferring funds among themselves and referring internally to one another -- both formally and informally, and inconsistently -- as "Agribusiness United," such that it can be difficult to tell which entity is operating at any given time. Doc. 13-1 (Declaration of Thomas Tisdale) at ¶¶ 7-17; *see also supra* fn. 3. The discovery sought is clearly targeted to fleshing those relationships out, *see supra* fn. 4, and is keyed to Pola's contention that Agribusiness Dubai is the principal to their charter agreement, with Agribusiness Savannah merely its agent. The type of materials sought is relevant (largely

limited to sussing out the corporate structure and interplay of the various Agribusinesses) and is limited to a relevant time frame (the past three years). The § 1782(a) discretionary factors militate toward permitting discovery.

Once the § 1782 factors are met, it is "the federal discovery rules, Fed. R. Civ. P. 26-36," which "contain the relevant practices and procedures for the taking of testimony and the production of documents." *Weber v. Finker*, 554 F.3d 1379, 1384-85 (11th Cir. 2009), *quoted in Application of Consorcio Ecuatoriano*, 747 F.3d at 1272. Objectors' conclusory contention that the subpoenas are "grossly overbroad" and thus must be quashed is simply not enough for this Court to determine the problem with production. *See* docs. 10 at 10 & 11 at 10. Indeed, they rest their entire objection on a single sentence describing the "problem" they have as being the "sheer size and vagueness of the requests." *See* docs. 10 at 12 & 11 at 12. But they offer no meaningful objections to the number, time period, or scope of documents to be produced and testimony sought. *See id.* They further contend that answering the subpoenas will require them to "disclose confidential pricing information," but offer no clue as to what privileged

materials might be disclosed or why a protective order couldn't be drafted to keep those materials confidential. *See* docs. 10 at 12-13 & 11 at 12-13. And that is just not enough. *See, e.g., Conway v. H&R Block Eastern Enterp., Inc.*, 2017 WL 2120074 at *1 & 3 (S.D. Ga. May 15, 2017).

Though the Court recognizes that requests for "any and all" documents are clearly overbroad, *see, e.g.,* Fed. R. Civ. P. 34(b)(1)(A) (requiring "reasonable particularity" in requests), objectors have offered no argument as to how the subpoenas are *unanswerable* -- the scope of each request can be narrowed through a meaningful conference between counsel and any fears that confidential commercial information could be released to the public allayed by a well written protective order.

That said, it is clear from their papers that the parties have not met and conferred -- much less *meaningfully* so -- to narrow the scope of their dispute before seeking court intervention.[6] They must do so, and

---

[6] Requiring meaningful consultation can lead to informal resolution and thus conservation of court resources. *Avera v. United Airlines, Inc.*, 465 F. App'x 855, 858-59 (11th Cir. 2012) (magistrate judge did not abuse his discretion in denying, without prejudice, plaintiff's motion to compel discovery where plaintiff had not sought to resolve his discovery dispute with defendant before filing the motion); *Jo Ann Howard & Associates, P.C. v. Cassity*, 2012 WL 1247271, at *8 (E.D. Mo. Apr. 13, 2012) (rejecting compulsion request in part because "the failure of the parties to

11

return to this Court only with narrowed, specific, and supported objections to claimant's subpoenas. *C.f.* S.D. Ga. Loc. R. 26.5(c); *Scruggs v. Int'l Paper Co.*, 2012 WL 1899405 at *2 (S.D. Ga. May 24, 2012) ("the lawyers here are professionals" and thus capable of fulfilling their duty to fully meet and confer before seeking the Court's intercession). Put another way, they shall in good faith (at least by phone if not in person) attempt to resolve movant's objections without further Court involvement. Fees may be assessed for any bad faith shown.[7]

---

communicate *materially* impeded their resolution of this matter.") (emphasis added).

[7] The parties are reminded that

> The scope of discovery under Fed. R. Civ. P. 26(b)(1) is broad and includes discovery regarding any matter, not privileged, which is relevant to the claims or defense of any party involved in the pending action. Those resisting discovery must show specifically how the objected-to request is unreasonable or otherwise unduly burdensome.
>
> *Claims and defenses* determine discovery's scope. Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence.

*Daniel Def., Inc. v. Remington Arms Co., LLC*, 2015 WL 6142883 at * 2 (S.D. Ga. Oct. 19, 2015) (cites and quotes omitted).

"The standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002); *McCleod v. Nat'l R.R. Passenger Corp.*, 2014 WL 1616414 at * 3 (S.D. Ga. Apr. 22, 2014) ("Rule 26, quite simply, sets forth a *very* low threshold for relevancy, and thus, the court is inclined to err in favor of discovery rather than against it."). The recent changes to the Federal Rules of Civil Procedure (in particular, Rule 26), although substantive and substantial, do not change the *definition* of relevance. Instead, they reemphasize and highlight

## III. CONCLUSION

In sum, objectors Agribusinesses North America and Commodities' motions to quash the subpoenas (docs. 10 & 11) are **DENIED** without prejudice, Agribusiness Dubai's motion to quash the subpoena (doc. 9) is **DENIED** as moot, claimant Pola's motion to compel compliance with the subpoena (doc. 18) is **DEFERRED** in abeyance of the parties' successful meet and confer discussions and compromises, and the parties are **ORDERED** within 30 days of service of this Order to update the Court as to whether a resolution has been reached and claimant's motion is withdrawn.

**SO ORDERED,** this __29th__ day of August, 2017.

*[Signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

requirements already present in the Rules, like proportionality. *See* Fed. R. Civ. P. 26, advisory committee note (2015) ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality. . . ."); *Sibley v. Choice Hotels Int'l*, 2015 WL 9413101 at * 2 (E.D.N.Y. Dec. 22, 2015) ("While proportionality factors have now been incorporated into the Rule 26(b)(1) definition, those factors were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii)").